IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

EUNICE M. WARDELL,

        Plaintiff;

v.

NANCY A. BERRYHILL,
Acting Commissioner
of Social Security,

        Defendant.

Civil Action No. 18-918-RGA

MEMORANDUM OPINION

Vanessa L. Kassab, DOROSHOW, PASQUALE, KRAWITZ & BHAYA, Wilmington DE, attorney for Plaintiff.

David C. Weiss, Gregg W. Marsano, Eric P. Kressman, and Brittany J. Gigliotti, Office of the General Counsel, Social Security Administration, Philadelphia, PA, attorney for Defendant.

April 12, 2019

**ANDREWS, U.S. DISTRICT JUDGE:**

Plaintiff Eunice Wardell appeals from the decision of Defendant Nancy A. Berryhill, the Commissioner of Social Security ("Commissioner"), denying her claim for disability insurance benefits under Title II of the Social Security Act. The Court has jurisdiction over the matter pursuant to 42 U.S.C. § 405(g).

Currently pending before the Court are cross-motions for summary judgment filed by Plaintiff and the Commissioner. (D.I. 12, 14). Plaintiff has filed an opening brief (D.I. 13), and the Commissioner has filed a combined opening and answering brief (D.I. 15). There has been no further briefing by the parties and Plaintiff's counsel confirmed a reply brief was not being filed. After reviewing the briefing and the administrative record, Plaintiff's motion is DENIED and the Commissioner's motion is GRANTED.

**I.   BACKGROUND**

**A.   Procedural History**

Plaintiff filed an application for Disability Insurance Benefits ("DIB") on December 4, 2012, alleging disability beginning on November 30, 2011. (Tr.[1] 184-90). Plaintiff is insured for disability benefits through March 31, 2017. (Tr. 15).

Plaintiff's application was initially denied on February 25, 2013, and was again denied on reconsideration on October 8, 2013. (Tr. 119-20, 137-38). On December 6, 2013, Plaintiff filed a request for a hearing before an Administrative Law Judge ("ALJ"). (Tr. 157). Plaintiff was represented by counsel at the hearing, held on October 22, 2015, via video teleconferencing. (Tr. 32-82). On August 4, 2016, the ALJ issued a decision denying Plaintiff's claim for DIB. (Tr. 17).

---

[1] The transcript is located at D.I. 8 and is submitted in 14 attachments. Because the transcript is continuously paginated, I will refer to it as "Tr." regardless of which attachment the information is located in.

On September 28, 2016, Plaintiff requested review of the ALJ's decision by the Appeals Council. (Tr. 4, 182-83). The Appeals Council denied Plaintiff's request for review on April 20, 2018. (Tr. 1-5). Thus, the ALJ's decision denying DIB became the final decision of the Commissioner. *See* 20 C.F.R. §§ 404.955, 404.981; *Sims v. Apfel*, 530 U.S. 103, 106-07 (2000).

On June 21, 2018, Plaintiff filed a Complaint seeking judicial review of the ALJ's decision. (D.I. 1). On December 6, 2018, Plaintiff filed her motion for summary judgment. (D.I. 12). The Commissioner opposed Plaintiff's motion and filed a cross-motion for summary judgment on January 4, 2019. (D.I. 14).

**B.     Factual Background**

Plaintiff was 57 years old at the time of the alleged onset of her disability in November 2011, and 61 years old at the time of the ALJ's decision. (Tr. 42). She is married and lives with her husband. (Tr. 202). Plaintiff has completed high school and has past work experience as a data entry clerk and program coordinator. (Tr. 204).

**1.  Plaintiff's Medical History[2]**

**a.  Psychiatric Consultation with Dr. Rebecca Moore – June 2013**

The first record of potential mental impairment is from June 2013 when Plaintiff was hospitalized for a neurological event. At that time, Dr. Rebecca Moore noted that Plaintiff may have a conversion disorder, as Plaintiff stuttered only when discussing distressing events or undergoing stressful situations. (Tr. 469-71). Dr. Moore further noted Plaintiff's stress regarding her unemployment and that Plaintiff expressed demoralization at not being able to work. (Tr. 469). At this consultation, Dr. Moore assigned Plaintiff a Global Assessment of Functioning ("GAF")

---

[2] As Plaintiff solely disputes the ALJ's severity determinations regarding Plaintiff's mental impairments, the medical history discussed herein will be limited to the impairments that are in dispute.

2

score of 55-65, indicating mild to moderate mental illness. (Tr. 471). Based on her evaluation, Dr. Moore "strongly encouraged" Plaintiff to seek outpatient psychotherapy. (*Id.*)

### b. Consultation with Dr. Brian Simon – September 2013

On September 30, 2013, Plaintiff underwent a consultative exam with Dr. Brian Simon, a psychologist, as a result of the Social Security Administration's determination that more evidence was needed to evaluate Plaintiff's mental impairments. (Tr. 529-33). Dr. Simon diagnosed Plaintiff with (1) an adjustment disorder with mixed disturbance of emotions and conduct, acute and (2) conversion disorder with mixed presentation (provisional), as well as assigning Plaintiff a GAF of 54, indicating a moderate mental impairment. (Tr. 532). Dr. Simon made the following conclusions in the context of the competitive labor market: Plaintiff had (1) a mild impairment in understanding simple, primarily oral, instructions, (2) a moderate impairment in carrying out instructions under ordinary supervision, (3) a moderate impairment in sustaining work performance and attendance in a normal work setting, (4) a moderately severe impairment in coping with the pressures of ordinary work, and (5) a moderate impairment in performing routine, repetitive tasks under ordinary supervision. (Tr. 527).

However, Dr. Simon's narrative evaluation also noted the following:

- Plaintiff "appear[ed] to be capable of making decisions, as well as exercising judgment, insight, and common sense at work." (Tr. 532).
- Plaintiff was "capable of interacting appropriately with others, performing simple tasks, and avoiding hazards at work." (*Id.*).
- "Her presentation did not suggest that [Plaintiff] has any problems maintaining concentration, focus, and attention at this time, and she should be able to understand, follow, and carry out simple instructions." (*Id.*).

3

- "[I]t appear[ed] that [Plaintiff] should be capable of managing any benefits that she is entitled to receive." (*Id.*).

- "Her attention and concentration were fair, [] speech was coherent, normal in rate, low in volume, and was goal directed. She did not show signs of having any articulation problems." (Tr. 531).

- "Her memory was good for immediate and fair for short-term material." (*Id.*).

- Plaintiff was "unable to perform serial calculations without making any errors." (*Id.*).

- Plaintiff "may encounter some problems adapting to different circumstances and being able to persist for a normal work period." (Tr. 532).

### c. Notes from Plaintiff's Treating Neurologist and Primary Care Physician

Dr. Michael Carunchio, Plaintiff's treating neurologist, notes depression and anxiety in his patient notes for Plaintiff. (Tr. 615-16, 622, 627, 632, 636, 638, 645, 647). However, Dr. Carunchio only addresses potential treatment steps for this diagnosis in the notes from October 31, 2013 and on January 28, 2016. (Tr. 647, 725). Additionally, Dr. Carunchio's notes consistently state that Plaintiff denies any history of psychological illness. Finally, Dr. Carunchio's assessments of Plaintiff's speech and mental status consistently state that Plaintiff has normal speech comprehension and that her recall is fair to good. (Tr. 619, 624, 629, 633-34, 639, 645-46).

Dr. Franklin Ampadu, Plaintiff's primary care physician, also notes anxiety and depression in the past medical, social, and family history section of his appointment notes. (Tr. 649, 651, 653, 655, 657, 659, 665, 667, 669-71, 673, 675, 677, 681, 683, 685, 687, 689, 691-93, 695).

## 2. The Administrative Hearing

At the hearing held on October 22, 2015, the ALJ heard testimony regarding Plaintiff's physical, neurological, and mental impairments. The following testimony was given regarding Plaintiff's mental impairments. Plaintiff testified that she had been receiving some medical care for mental health impairments but was no longer doing so because she could not afford it. (Tr. 54). She testified that she went to four sessions before she stopped in 2012 or 2013. (*Id.*). She testified that she was not taking any medication for mental health impairments. (*Id.*). She testified that she did not do much of anything during the day because she got depressed. (Tr. 63). She testified that she has "just a little[,] not much" problem focusing or concentrating. (*Id.*).

The Vocational Examiner ("VE") also testified. The VE identified Plaintiff's past relevant work as:

(1) Data entry clerk, sedentary exertion, semi-skilled, SVP 4;

(2) Warehouse worker, medium exertion, unskilled, SVP 2;

(3) Cashier, light exertion, unskilled, SVP 2;

(4) Meat cutter, heavy exertion, skilled, SVP 6;

(5) Program coordinator, light exertion, skilled, SVP 8. (Tr. 68-69).

The ALJ asked the VE multiple hypothetical questions to assess whether Plaintiff could perform any past relevant work. The first hypothetical posed by the ALJ provided the following restrictions: the hypothetical individual can perform work at the light exertional level, limited to occasional pushing and pulling with the bilateral lower extremities, limited to occasional pushing or pulling with the right hand, limited to occasional postural activities, but can never climb ladders, ropes, or scaffolds. (Tr. 70-71). Additionally, the individual could frequently grasp and finger with the right hand, but can not work around unprotected heights, moving machinery, open bodies

5

of water, open flame, heated equipment, or other equipment like that. (Tr. 71). The person must perform work indoors to avoid direct sunlight and on even flooring surfaces that are dry. (*Id.*). The person should not be exposed to more than a moderate noise intensity level or be exposed more than occasionally to extreme temperatures, humidity or atmospheric irritants. (*Id.*). The VE responded that under this hypothetical, the past work of program coordinator could be performed. (*Id.*).

In the second hypothetical, the ALJ changed the hypothetical person's abilities, by limiting performance of grasping and fingering to only occasionally. (*Id.*). The VE testified that the job of program coordinator could not be performed with that limitation. (Tr. 72). The VE also testified that the job of the data entry clerk could not be performed with that limitation. (Tr. 73).

The third hypothetical presented the same limitations as the first hypothetical, but at the sedentary exertional level, and with handling and reaching with the right hand limited to frequent. (Tr. 74). The VE testified that the position of data entry clerk would be available. (Tr. 75).

The final hypothetical posed limited handling and fingering with the right hand to occasional at the sedentary exertion level. (*Id.*). The VE testified that no past relevant work could be performed with those limitations.

In response to questions from Plaintiff's attorney, the VE stated that if the hypothetical individual were likely to miss three or more days of work per month on a consistent basis, none of the past relevant jobs or any other competitive employment would be available. (Tr. 77). The VE also testified that if a hypothetical individual were to be off-task 20% or more of the workday, the individual could not sustain employment. (Tr. 77-78).

6

### 3. The ALJ's Findings

On August 4, 2016, the ALJ issued the following findings:

1. The claimant meets the insured status requirements of the Social Security Act through March 31, 2017.

2. The claimant has not engaged in substantial gainful activity since November 30, 2011, the alleged onset date (20 C.F.R. 404.1571 et seq.).

3. The claimant has the following severe impairments: cerebrovascular disease, late effects, migraine headaches, carpal tunnel syndrome, nonepileptic seizures, asthma, and degenerative disc disease (20 C.F.R. 404.1520(c)). . . . The claimant's medically determinable mental impairments of affective disorder, adjustment disorder, and conversion disorder, considered singly and in combination, do not cause more than minimal limitation in the claimant's ability to perform basic mental work activities and are therefore nonsevere.

4. The claimant does not have an impairment or combination of impairments that meet or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. 404.1520(d), 404.1525, and 404.1526).

5. After careful consideration of the entire record, . . . the claimant has the residual functional capacity to perform sedentary work as defined in 20 C.F.R. 404.1567(a) except she is limited to no more than occasionally pushing/pulling with the bilateral lower extremities and right upper extremity. She can never climb ladders, ropes, or scaffolds, and can no more than occasionally climb ramps and stairs, balance, stoop, kneel, crouch, or crawl. She is limited to no more than frequently grasping and fingering with the right hand. She cannot have more than occasional exposure to extreme temperatures, humidity, and atmospheric irritants such as dusts, odors, fumes and [gases]. She cannot perform work around unprotected heights, moving machinery, open bodies of water, open flame, heated equipment such as ovens, cooktops, or in boiler rooms and the like. Work must be performed indoors to avoid direct sunlight, and in environments in which the flooring surfaces are even and dry. She cannot be exposed to more than a moderate noise intensity level . . . .

6. The claimant is capable of performing past relevant work as a data entry clerk. This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 C.F.R. 404.1565).

7. The claimant has not been under a disability, as defined in the Social Security Act, from November 30, 2011 through the date of this decision (20 C.F.R. 404.1520(f)).

(Tr. at 17-25).

7

## II. LEGAL STANDARD

### A. Standard of Review of the ALJ's Findings

A reviewing court is limited to determining whether the Commissioner's factual findings are supported by "substantial evidence." 42 U.S.C. § 405(g). "Substantial evidence" is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood*, 487 U.S. 552, 564-65 (1988). In reviewing whether substantial evidence supports the Commissioner's findings, the court may not "re-weigh the evidence or impose their own factual determinations." *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 359 (3d Cir. 2011) (citation omitted). The reviewing court must defer to the ALJ and affirm the Commissioner's decision, even if it would have decided the factual inquiry differently, so long as substantial evidence supports the decision. *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999).

The reviewing court must also review the ALJ's decision to determine whether the correct legal standards were applied. *Sykes v. Apfel*, 228 F.3d 259, 262 (3d Cir. 2000). The court's review of legal issues is plenary. *Id.*

### B. Disability Determination Process

The Commissioner must follow a five-step sequential analysis in determining if an individual is disabled. 20 C.F.R. § 404.1520. Thus, the Commissioner must determine whether the applicant: (1) is engaged in substantial gainful activity; (2) has a "severe" medical impairment; (3) suffers from an impairment that is listed in the regulation's appendix; (4) can still perform past relevant work; and (5) can perform any other work existing in significant numbers in the national economy. *McCrea v. Comm'r of Soc. Sec.*, 370 F.3d 357, 360 (3d Cir. 2004) (citing 20 C.F.R. § 404.1520).

## III. DISCUSSION

On appeal, Plaintiff present several arguments: (1) the ALJ erred in finding that Plaintiff's mental impairments were non-severe; (2) the ALJ failed to pose a complete hypothetical question to the VE that took into account the ALJ's findings that Plaintiff suffers from mild limitations in concentration, persistence, and pace; (3) the ALJ erred in finding that Plaintiff was able to return to her past relevant work as a data entry clerk; and (4) the ALJ erred in failing to appropriately apply the medical-vocational guidelines in this case. (D.I. 13 at 4). Plaintiff requests that the Court reverse the Commissioner's decision and remand with instruction to award benefits, or in the alternative, remand to the Commissioner for further proceedings. (*Id.* at 23). I address these arguments in turn.

### A. The ALJ's Step Two Analysis of Plaintiff's Impairments

Plaintiff argues the ALJ erred at step two when she found that Plaintiff's mental impairments of affective disorder, adjustment disorder, and conversion disorder were non-severe impairments despite her own finding that Plaintiff had mild limitations in concentration, persistence, or pace. (Tr. 18-19). Plaintiff argues that the ALJ erred because her findings were not based upon substantial evidence. (D.I. 13 at 16).

At step two of the disability determination, the ALJ must determine whether a claimant's various impairments are "severe." For medically determinable mental impairments, the ALJ must "rate the degree of functional limitation resulting from the impairments." 20 C.F.R. § 404.1520a(b)(2). "If [the ALJ] rates the degree of [] limitation as 'none' or 'mild,' [the ALJ] will generally conclude that [the] impairment(s) is not severe, unless the evidence otherwise indicates that there is more than a minimal limitation in [] ability to do basic work activities." 20 C.F.R. § 404.1520a(d)(1). Basic work activities include carrying out, understanding, and

9

remembering simple instructions, using judgment, responding appropriately to supervision, co-workers, and usual work situations, and dealing with changes in a routine setting. 20 C.F.R. § 404.1522. "A 'severe' impairment is distinguished from 'a slight abnormality,' which has such a minimal effect that it would not be expected to interfere with the claimant's ability to work, regardless of her age, education, or work experience." *Salles v. Comm'r of Soc. Sec.*, 229 F. App'x 140, 144 (3d Cir. 2007); Social Security Ruling ("SSR") 85-28. Additionally, to be "severe," the impairment must last or be expected to last for a continuous period of at least twelve months or result in death. 20 C.F.R. §§ 404.1509, 404.1520(a)(4)(ii). While Plaintiff bears the burden of proving that any alleged impairment is "severe," *Boone v. Barnhart*, 353 F.3d 203, 205 n.4 (3d Cir. 2003), the Third Circuit has stated that the severity determination is a *de minimis* inquiry that should be resolved in favor of the claimant when any doubt exists. *See McCrea v. Comm'r of Soc. Sec.*, 370 F.3d 357, 360 (3d Cir. 2004).

I do not find that the ALJ erred in determining that Plaintiff's mental impairments of affective disorder, adjustment disorder, and conversion disorder were non-severe impairments as her determination was based on substantial evidence.

**First**, I note that under the controlling regulation, the ALJ's finding that Plaintiff had mild limitations in concentration, persistence, or pace is consistent with a determination that the impairments are non-severe. *See* 20 C.F.R. § 404.1520a(d)(1).

**Second**, I do not find that the ALJ improperly gave "little weight" to Dr. Simon's opinions. The reviewing court's function is not to re-weigh the evidence, but to determine if there is substantial evidence in the record that supports the ALJ's findings. Moreover, Dr. Simon's opinions provide additional evidence supporting the ALJ's findings. Dr. Simon's notes state that Plaintiff had "no problems maintaining focus, attention, and concentration," "never had any

10

emotional deterioration at work," was "fully oriented with fair to good memory," and was "capable of making decisions, as well as exercising judgment, insight, and common sense at work." (Tr. 531-32). Additionally, the ALJ appropriately considered and weighed other evidence in the record including (1) Dr. King's testimony that Plaintiff did not suffer from severe limitations resulting from her mental impairments (Tr. 132-33), (2) Plaintiff's own testimony that she had "just a little" trouble maintaining concentration, persistence, or pace (Tr. 63), that she never had any emotional deterioration at work (Tr. 18, 531), and that she could pay bills, count change, and use a checkbook (Tr. 18, 218), and (3) Plaintiff's application for disability that alleged her impairments did not affect her memory, understanding, concentration, or ability to follow instructions. (Tr. 220).

**Third**, though Plaintiff is correct that the ALJ incorrectly stated that "there are no referrals for" mental health treatment, this error does not negate the substantial evidence in the record that Plaintiff's limitations were not severe. Moreover, the ALJ correctly noted that Plaintiff only received conservative treatment, and that the nature of Plaintiff's complaints was transient. (Tr. 19, 472, 469-70, 503).

Thus, I determine that substantial evidence supports the ALJ's determination at Step Two that Plaintiff's alleged mental impairments were not severe.

### B. The Hypothetical Questions Posed by the ALJ

Plaintiff argues the ALJ made an error of law by failing (1) to pose a hypothetical question to the VE that included Plaintiff's mild limitations in concentration, persistence, and pace, and (2) to include the mild limitation in concentration, persistence, and pace in her RFC. (D.I. 13 at 18).

"The vocational expert's testimony concerning a claimant's ability to perform alternative employment may only be considered for purpose of determining disability if the question

11

accurately portrays the claimant's individual physical and mental impairments." *Podedworny v. Harris*, 745 F.2d 210, 218 (3d Cir. 1984). The Third Circuit has clarified "that the ALJ must accurately convey to the vocational expert all of a claimant's *credibly established limitations*." *Rutherford v. Barnhart*, 399 F.3d 546, 554 (3d Cir. 2005). "[W]here a limitation is supported by medical evidence, but is opposed by other evidence in the record, the ALJ has discretion to choose whether to include that limitation in the hypothetical. This discretion is not unfettered—the ALJ cannot reject evidence of a limitation for an unsupported reason." *Zirnsak v. Colvin*, 777 F.3d 607, 614 (3d Cir. 2014).

Here, the ALJ appropriately exercised her discretion to choose whether to include the mild limitations in concentration, persistence, or pace, found at step two, in the hypotheticals posed to the VE. In making the residual functional capacity ("RFC") determination, the ALJ noted that "the claimant's alleged Meniere's disease, hearing loss, tinnitus, affective disorder, adjustment disorder, and anxiety do not create more than minimal limitations on her ability to function" and that, after considering the record as a whole, "the claimant's allegations are not fully consistent with the evidence and the claimant is capable of doing more than she alleges." (Tr. 23). Thus, the ALJ's failure to pose a hypothetical to the VE including such limitations does not warrant remand. *See Holley v. Comm'r of Soc. Sec.*, 590 F. App'x 167, 168-69 (3d Cir. 2014).

### C. The ALJ's Conclusion that Plaintiff was Capable of Past Relevant Work

Plaintiff contends that the ALJ erred at Step Four in finding that Plaintiff could return to her past relevant work as a data entry clerk. (D.I. 13 at 20). Plaintiff appears to more specifically contend that the ALJ erred because she "failed to consider all the relevant limitations that were contained in the record" in determining the Plaintiff's RFC. (D.I. 13 at 21).

At step four of the disability determination, the ALJ must review the claimant's RFC and the physical and mental demands of the claimant's past work to determine whether the Plaintiff could return to a previous job. 20 C.F.R. 404.1520(e). The Third Circuit has adopted a three-step process to determine whether a claimant's RFC enables her to perform her past relevant work. *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 120 (3d Cir. 2000). It requires the ALJ (1) to make specific findings of fact as to the claimant's residual functional capacity, (2) to make findings of the physical and mental demands of the claimant's past relevant work, and (3) to compare the residual functional capacity to the past relevant work to determine whether the claimant has the level of capability to perform the past relevant work. *Id.* In assessing an RFC, the ALJ must consider all of an individual's impairments, even those that are not "severe." SSR 96-8.

As stated above, substantial evidence supports both the ALJ's determination that Plaintiff's mental impairments are not severe and the ALJ's determination of Plaintiff's RFC. Plaintiff does not contend that the ALJ's comparison between the RFC and the identified past relevant work was flawed. Thus, I determine that there is substantial evidence supporting the ALJ's assessment that Plaintiff can perform the past relevant work of a data entry clerk.

### D.     Medical-Vocational Guidelines

Plaintiff asserts that the ALJ erred by failing to appropriately apply the Medical-Vocational Guidelines in Plaintiff's case. However, as explained previously, I have determined that there is substantial evidence in the record supporting the ALJ's determination that Plaintiff was capable of performing past relevant work as a data entry clerk, and thus was capable of the semi-skilled work that position required. Thus, the ALJ appropriately applied the Medical-Vocational Guidelines to Plaintiff's case.

## IV. CONCLUSION

For the foregoing reasons, Plaintiff's motion for summary judgment is DENIED and the Commissioner's motion for summary judgment is GRANTED. Thus, the Commissioner's final decision is affirmed. An accompanying order will be entered.